Welcome to the Fifth Circuit. We have four cases to be argued. The first case we'll call is United States of America v. Edilberto Naiso Diaz. He refers from Mr. Locke. May it please the Court. Shannon Locke for Mr. Edilberto Naiso Diaz. We are here today because improperly admitted evidence contributed to the guilty verdict rendered against Mr. Diaz by a jury. That evidence, Your Honors, were two statements. The first statement, that Mr. Diaz had devoted his life to trafficking marijuana. And the second statement, that if Mr. Torres needed trucks, that they had trucks. These statements went to the very core of the government's case. At issue, according to the prosecutor's closing argument, after all the testimony was heard, at issue was whether or not Mr. Diaz knew that his trucks were being used to traffic marijuana. Can you explain a little bit what happened when this dispute came up in open court about Andres? The district judge refers to a discovery email. What's that mean? So at that point, Your Honor, when the statement was about to come in, the trial counsel objected. The prosecutor said that it was a statement of a co-conspirator. He further objected and said, I haven't seen this person's name anywhere, this Andres. I haven't seen his name anywhere. And they do say that there's a discovery email, but the record is silent about where that discovery email went or — Is there anything implicit in that? I don't know what a discovery email would mean. Is there anything, any understanding that the parties had about what that is? I have looked for that part of the record. Not necessarily the email, but just what is he talking about? I think that it must have been a mention in a police report or an investigator summary or something like that, and that may have been turned over to Mr. Barrera. But the record in front of the Court was whether or not, and the analysis that should have been conducted, is whether or not there was a preponderance of the evidence that the four elements that this Court has previously found were met to satisfy a co-conspirator statement being brought up. The government argues both that that sufficient evidence was there, but also that it doesn't even need to be this conspiracy. What's your position on whether it needed to be evidence on which the Court could rely that they — that Andres was involved in this conspiracy as opposed to a conspiracy involving something else with Mazo? And I find that troubling, Your Honor. I think that all the courts— There's some case law like that, and they cite it from this Court. So all the prior case law has been linear conspirators. This — so they're — and I do believe that they're discussing a different conspiracy, a conspiracy that involves Mr. Torres, Mr. Gray-Ramirez, and Mr. — and Andres. And so, Judge, for that reason, whether or not it advanced this conspiracy, the conspiracy that Mr. Diaz was involved in before it can be admitted against him should be the primary concern before this Court. Well, I don't know if they cited or whether something able assistants to me came up with, but among the case law from 20 years ago, U.S. v. ARC, A-R-C-E, the conspiracy that forms the basis for admitting co-conspirator statements need not be the same conspiracy for which the defendants are being tried. Now, that's an aberration, and that's not really the law? Are you saying that's not the law? Well, I'm not sure that it should be the law. And I don't know that there should be some attachment to Mr. Diaz. And here there isn't any. Right. It has to be, I think, definitely a conspiracy that's involving whoever this witness is and the defendant against whom the hearsay is being offered. Well, keep going. What is the evidence here that would tie — or what's your position on the evidence here that would tie him to this conspiracy? So that — well, I don't think there is very much of it. Well, that's what I want you to address. What do we know, and why is that not enough? So what we know, Your Honor, is that Torres and Andres and Gray Ramirez conspired to traffic methamphetamines. That's pretty clear from the record. Torres is indicted, and he pleads guilty to smuggling methamphetamines. Andres is not — when Gray Ramirez asks, is he involved in this conspiracy, he says no. That's very clear from the record. And so does that satisfy, by preponderance of the evidence, those four factors? So the standard is that there has to be an existence — the existence of a conspiracy. And I think that conspiracy has to involve Mr. Diaz. It doesn't here. Mr. Torres is asked directly, in his second part of his testimony, he's asked directly, how does Andres fit into this? And he says, well, later I trafficked methamphetamines with Andres and Gray Ramirez. Gray Ramirez is asked, does Andres — is he involved in trafficking the marijuana? He said no, he's not. Bishop is asked, the case agent is asked, how does Andres fit into this? And he says, we haven't been able to prove how Andres has been able to fit into this. But doesn't Bishop say he has an opinion and offers it? He says he believes. He believes. But is that independent evidence? Are you asking me? Well, I — Rhetorical question. I got you. I'm asking rhetorically. I don't think it is independent evidence, Your Honor. It's — and certainly his mere belief, well, how did you get to that belief? And nothing is offered to support that. And so we have a situation where Andres' statement, which is so inflammatory and so germane to the main question at issue, that Mr. Diaz devoted himself to trafficking marijuana, and that if he needed trucks, that they had trucks, that Andres had said that. Those statements go to the very core of the case. And at that point, Your Honor, whether or not there was an existence of conspiracy, was it made by a co-conspirator, how did Andres — how is he a co-conspirator with Diaz? That question was not answered. It was not answered in any way that would be satisfactory to any level of evidence, much less a preponderance of the evidence. Was the statement made during the course of a conspiracy? Again, there's no evidence of that. And the statement was not made in furtherance of this conspiracy, the conspiracy to traffic marijuana. And so for those reasons, Your Honor, we would submit that there was not — that the Court abused its discretion by failing — Very good, Your Honor. What about a harm analysis? Certainly. And so as we look at the harm analysis, whether or not there's a substantial probability, whether or not this evidence contributed to the conviction — That's not the test, is it? I'm sorry, Your Honor. It's whether or not this evidence contributed to the guilty verdict against my client. That is the test that the Court has previously found, and it did. The prosecutor refers to it in its closing argument. The prosecutor says that the one question at the end of the case is whether or not Mr. Diaz knew that his trucks were being used to traffic the marijuana. And these two statements go directly to that issue. And so, yes, it did contribute to the guilty verdict against him. But wasn't there a lot of other evidence? Excuse me, Your Honor? Wasn't there a lot of other evidence that supported — Well, the other evidence, Your Honor, as we look at the other evidence, the other evidence was extremely contradictory. And so I would ask the Court, why would the government call this witness? The only reason it called this witness was to bring in these two statements. That should also contribute to the harm analysis. This witness contributed nothing else. He was a methamphetamine trafficker, and he expected to get a sentencing breaker as a result of that. And so that, I think, should give the Court some insight as to how important this evidence was against Mr. Diaz. Not only did it go to the court, not only was the prosecutor using it, but the only reason they called it. It's not like this witness had other evidence against Mr. Diaz or — Can you say if Mr. — I forgot his name — this witness, if he had not been called or testified, there would not have been sufficient evidence to convict your client? Well, Your Honor, I think that that is a question that a new jury should decide. And I think that it is — I think that as the Court looks at this, I think that the government's case may have been in peril. After they called Mr. Oroche and after they called Mr. Gray-Ramirez, that evidence was in direct conflict with each other. Mr. Oroche said that he'd never dealt with Mr. Diaz, even though, as far as the trafficking marijuana went, that he'd never dealt with him, even though they'd had a longstanding relationship. He said he'd never dealt with Mr. Diaz until after he was sentenced. He received his 60 months, and Agent Bishop went to visit him in Georgia and showed him some pictures, and then he realizes that Mr. Diaz was indeed involved in the trafficking of the marijuana. Mr. Gray-Ramirez, the other main co-conspirator, the one who said that Andres was not involved in this conspiracy, Mr. Gray-Ramirez says, look, I didn't deal with Oroche Calderon. I had nothing to do with him, but he hired a lawyer for him. That is evidence that I think should cause some concern. And as the government looked at the state of that evidence, they needed somebody else. They needed somebody who wasn't going to be contradicted, and that's why they called Torres. And so I do believe that it contributed to Mr. Diaz's guilty verdict, and for that reason there was harm to my client, and it did affect a substantial rise. Your Honors, I'd ask that you look at the second part of Mr. Torres's statement. In that statement, he says that after the conversation with Mr. Diaz, that that conversation didn't really go anywhere, that he then went on and trafficked the methamphetamine with Gray-Ramirez and Andres. That's why Andres's number was in Gray-Ramirez's phone number or phone when Gray-Ramirez was arrested. That's why this was a separate conspiracy. Mr. Diaz was not accused in front of the jury, not accused, of the methamphetamine trafficking. It was a separate issue, a separate conspiracy. And that statement, the statement made by Andres, fails the four-part test. It was not a preponderance of the evidence. And for that reason, we'd ask that they— The evidence would not support a jury finding that there was one conspiracy that dabbled in both meth and marijuana? No. So I think that the jury charge and the indictment—it was a four-count indictment— that indictment centered around marijuana trafficking. And so the methamphetamine trafficking was a separate situation. And it's troubling, I think, that that conspiracy— I don't think the government should be able to use any conspiracy to tag that to Mr. Diaz to introduce that kind of evidence against him. I thought that three different witnesses talked about Mr. Diaz's involvement in trafficking marijuana at length. Three different witnesses, Mr. Gray-Ramirez, Oroche Calderon, and Mr. Torres. And Oroche Calderon was a driver who originally said that he did not deal with Diaz and then changed that testimony after he was sentenced. But whatever—there was direct testimony from him? Yes. And direct testimony from the two other witnesses linking Mr. Diaz? Direct testimony from Mr. Oroche Calderon and direct testimony from Gray-Ramirez, yes. And then the testimony that we find objectionable, the testimony from Torres, that he had devoted himself to trafficking marijuana and that if he needed trucks, meaning if Torres needed trucks, that they had trucks. And that evidence, Your Honor, contributed to the verdict. I don't think contributed is quite the harmless error, but it's a fair assessment. I'm not trying to quibble with you too much. But it does seem to me that we—that the harmlessness prejudice analysis requires us to find that if it were improperly admitted, that it did not affect the verdict. So the fact there's other evidence, I think you're saying, is not sufficient. But there is pretty, seems to me, direct statements from other witnesses that would weigh heavily on the side of the government in this to say that any invalidity into the evidence from he or she, from Andres, was harmless. Isn't there at least, will you allow, direct evidence, you want to say that some of it was somewhat inconsistent, from other witnesses, that your client was directly involved in this conspiracy with marijuana? So it was—there was direct evidence from other witnesses, yes. So the real problem here is, was it sufficiently impeached or contradictory or something where the very firm statements through an intermediary from Andres could have turned the tale? And I think that is the concern. So you have two co-conspirators who are testifying in contrast to each other, almost. You can't believe everything Oroche Calderon says. You can't believe everything that Gray-Ramirez says. But you already did. I mean, Oroche Calderon and Gray-Ramirez both testified that Diaz was present when drugs were loaded onto the truck. Now, that's fairly direct evidence from two different people. Right. But it would— And we can infer the jury believed them. Well, we don't know if they believed them. They believed Torres or a combination of the— And you should cite as a case where this Court has said in spite of two witnesses directly identifying the defendant as being involved in the drug trafficking scheme, we said insufficient to support the verdict. I'm not asking that an insufficiency—that it's not an insufficiency. Okay. That the—it satisfied—it was harmful error to allow a hearsay statement. Well, I think the problem is that you can't— What's your best case? Well, the best case is that you have this contradictory— What's your best decision from our court or the U.S. Supreme Court? Well, Your Honor, I think that as we look at the totality of your cases, you see direct co-conspirators testifying and having their statements come in against their other co-conspirators. And so I think that it's a problem to expand that. But on the harmful error analysis, where has this Court said, even though we have two witnesses that say he was involved, it was harmful error to admit hearsay testimony? So—and I don't have that case, Your Honor. But I don't think that your case law precludes this being a problem. You have an analogous case on harmful error analysis. Well, I don't. But at the same time, I think that this case stretched the bounds of co-conspirator hearsay admissions. And for that reason, this case should be reversed and remanded. I see that I'm out of time. I appreciate the Court's attention, and I'll be back for my rebuttal. Thank you, sir. Ms. Wilson? May it please the Court. The district court did not abuse its discretion in permitting Torres to testify briefly of what Andrews said to him in front of Diaz. It was a statement by a co-conspirator in furtherance of the conspiracy. It sounds like the judge wasn't all that sure about the conspiracy either, and he even gave something of a warning, unless I'm confusing what part of the record this is, that I hope you can tie all this up later. Do you have any further explanation of what the district judge was meaning when he refers to a discovery email? I brought it up with me, Your Honor. What the judge says is, do you have the discovery email with you? I'm going to let you go. Continue on. If it's not there, we're going to have a problem. Are you sure it's there? And the prosecutor responded, I'll double-check, Your Honor. Right now I don't have a report. Excuse me. Right now I have a report on my desk. I'll double-check. Okay. And the prosecutor had previously responded that he believed it was in the discovery email and that he had been. What do you mean what? Excuse me? What would that mean? Well, that he had identified Andres in a prior email, either as Andres or Andres Medina. But after the court says that and they're on a break, the discussion dies. So I'm not going to speculate on the record, but one could say, well, it was produced or they would have come back on the record because the court said they would have had a problem. But the factor of the matter is, after that court voiced its concern, that issue died, for lack of a better term. But here's why the statement comes in under the non-hearsay exception. First, they were both there, meaning Diaz and Andres. And Andres was doing the talking, and he was recruiting Torres to traffic marijuana. He said that Diaz was a marijuana trafficker and that Torres, who we know was a driver and did not have a truck, that Andres said that they had trucks available to traffic or, let's say, to transport the marijuana. That was the extent of the statement. But the government's burden of proof to get this evidence in was low. Specifically, it was preponderance of the evidence, nothing more. And the four elements were satisfied. First, that limited statement didn't establish the existence of the conspiracy. Other witnesses and the government's exhibits did that, and I'll explain that in a little more detail later. But secondly, as I said before, Andres was a co-conspirator. Torres testified that the group whom he identified as Diaz, Andres, Graber-Merez, and Cruz all trafficked marijuana. And that's on 426 through 427 of the record. When Torres was arrested, he had Andres and Graber-Merez numbers in his wallet and said they were going to pay him. That's on 447 and 471. It's inconsequential that Graber-Merez didn't think Andres, whom he had met at Diaz's house, was involved. The law is clear that a co-conspirator doesn't have to know all the details of the conspiracy, nor does he have to know everyone in it. He just has to knowingly participate in some way in the larger objectives of the conspiracy. Agent Bishop told the jury that the drug trafficking organization was like an onion with various layers. Graber-Merez was the broker, and the evidence supports the fact that Graber-Merez was the one dealing with the contact in Mexico regarding the drugs. Agent Bishop described Torres as a transporter, which makes sense because he was a driver. He also said Diaz oversaw transportation and other details. In other words, he sort of had a white-collar position. And he also said Andres was on the receiving end, which I take to mean, and the evidence suggests, that once the drugs got to Dallas, then Diaz stepped in. The third and fourth elements are also satisfied. Andres' statements were made during the conspiracy and furthered its purpose. This wasn't just chatter. As I said before, Torres drove trailers, and Andres told him about an opportunity to traffic marijuana for an existing operation with the truck. But even if this Court finds that somehow error occurred, it was harmless. The ruling didn't affect Diaz's substantial rights. He hasn't shown there's a reasonable probability the testimony contributed to his conviction. And along the lines of rejecting, this Court also must reject his attempt to tuck in a confrontation clause argument for the first time under harmless error. The precedent is clear in this circuit that a party cannot raise new issues in a reply brief, which is what this happened. But looking at the harmless error, which is one standard, but coupling it with the insufficiency argument, which is a different standard, the same evidence negates both his insufficiency arguments and that the evidence was harmful. Kennedy. But you do agree that even if the evidence is sufficient, that doesn't answer whether the introduction of inadmissible evidence was harmless. It could well have sufficient evidence. But the improper evidence could have affected the jury, and we can't sort that out. And the standard is sometimes stated as strongly as we must be able to decide beyond a reasonable doubt that the improper evidence did not affect the verdict. So it's two different — it's a very much different standard beyond sufficiency. Absolutely. But both of them require this Court to look at the evidence. And that evidence shows that it was undisputed that Diaz's company trucks were involved in the first and second seizures, and his signs were also on the third seizure. Both Arroche Calderon, Gray-Ramirez, and Torres testified at length about Diaz's involvement in marijuana trafficking. For example, Arroche discussed how Diaz directed him and how the operation worked. He said more than once it was the same thing each time. Arroche and Gray-Ramirez testified that Diaz was present when the drugs were loaded. For the third one, they were also — Diaz and Gray-Ramirez were present when they told — when they told Arroche that the truck would be delivered already loaded this time. Also, Agent Bishop explained that Diaz was higher up in the organization. And not only did he provide the trucks, but he recruited the drivers. He organized the transportation of the drugs. He dealt with others in the drug trafficking organization. And after Gray-Ramirez paid him, he was supposed to pay his drivers. But one thing that's very important that nobody's discussed so far, I think, is that we had the unusual situation where the defendant actually testified. And so the jury heard Diaz himself try to explain away his innocence, which clearly the jury rejected. But he talked about how he was innocent and he didn't know what was going on with the transportation and what have you. And if you read that testimony, you will see that some of his discussions were fairly feeble, particularly in light of how others testified. And while the credible evidence of one co-conspirator under this Court's precedence is enough to convict somebody, here the jury had far more and was the sole arbiter not only of the credibility of the evidence, but what conclusions should be drawn from them. The Court, Diaz also failed to satisfy his high burden of proof that reversible plain error occurred in conjunction with the district court's jury instruction. There's no likelihood a grave miscarriage of justice occurred here. The failure to mention Diaz, excuse me, Andres in the instructions, was not the difference between acquittal and conviction. As Diaz recognized, the district court carefully admonished the jury. He disagrees in relation to how far it should have gone. But here the jury instructions, the jury, excuse me, the court instructed the jury regarding the three co-conspirators who testified. And he had the court address facts unique to them, such as their prior convictions, plea agreements, and hopes of receiving a benefit. In doing so, the court stressed about weighing the credibility of these witnesses. And in doing so, it invoked Torres' statements in relation to Diaz. So in other words, Torres was specifically mentioned in the jury instructions, and Torres is the one who had testified about Andres. Andres, of course, not only did not testify, but there was testimony about him. Kennedy, it seems to me the instruction, if any, on this that would be relevant wouldn't be a co-conspirator testimony. The instruction would be something about hearsay exceptions and from co-conspirators. I don't know if there's any pattern jury instruction like that. It just seems to me that it's apples and oranges to talk about the credibility of somebody who's being quoted from outside of the courtroom, being quoted inside the courtroom from outside. So it's not the same kind of warning. Andres wasn't cutting a deal with anybody when he made that statement, if he made it, to Torres. The court spent more than, I think it was something like three pages, talking about how it's the jury's province to weigh this evidence, to look at all the witnesses carefully and whatnot. And so in that, in conjunction with that, Torres and by virtue of Torres' testimony, Andres is embraced. And here, as I said before, the court repeatedly cautioned the jury about the importance of the instructions. And this court presumes that a jury follows its instructions, and here there was no error in its instructions. And unless the court has to. The plain error standard would be, aren't we? There was no objection. Correct. The plain error is not even a piece of discretion. That's exactly correct. So it's an extraordinarily high standard, and Diaz just has not met it here. So unless the Court has any additional questions, I'll yield the remainder of my time. Thank you. I'm sorry. Do you? We'll take the time. Okay. Mr. Clark. Thank you, Your Honor. You have five minutes on the button. Excuse me. I didn't hear that. You have five minutes on the button. Thank you. Now you have 4.53. Thank you. I just wanted to refer to that 4.26 and 4.27 that the Assistant U.S. Attorney, the plaintiff referred to. 4.26 and 4.27, that's an important piece of the record. And in that piece of the record, he repeats the statement that Andres made. This is Torres' testimony? Yes. So it's sort of broken into two. There's a bench conference. He testifies, then there's a bench conference, then he picks back up. And in that 4.27, he says, so there's another one, Ramirez, Benigno Ramirez. So Benigno Ramirez applied to me through Andres the methamphetamine. He knows him. He knows Maso. He knows Cruz. So therefore, they're the same people. That's what I'm trying to say. It's the same truck. He explained this the other time. So that is the problem, is that he is describing a different conspiracy. It's not the conspiracy that involves the marijuana. It's the conspiracy that involves the conspiracy there goes Ramirez, Andres, Torres, Ramirez. It doesn't involve Mr. Diaz. He's not a part of that conspiracy. And so that's the problem, and that's the error. At some point, they should have gone through the four factors. Had they gone through those four factors, they wouldn't have been able to produce any independent evidence. The government says in their brief, on page 35 of their brief, that they need independent evidence. Well, what is it? What's the independent evidence? It's not there. Agent Bishop's belief cannot be that independent evidence. Can you explain to us what your client said on the stand and why that exposure of his credibility to the jury did not hurt him? Well, so, one, he wasn't asked about the Andres meeting. So he was silent about that. He wasn't asked about that, and he didn't say anything about that, either by the government or by his own attorney. So there's no independent evidence there. Just an overall guilt, I think. Sure. So, and I guess to pick up the idea that there are two separate issues here. Was he harmed by the admission of this evidence is question number one. Sufficiency is question number two. So I don't believe that Mr. Diaz presented any evidence to help the government's case. Was he asked to explain, for example, the statements that Oroche and Ramirez made about, we saw him, he was there when the trucks were loaded. On this trip, the truck was already going to be loaded. I think they said at one point that it was always the same method, except at one time the truck was already going to be loaded. Did he get into any of that, why they would say that? So he did not know and reiterated that he did not know that his trucks were being used for this, for the trafficking of the marijuana. And that's how he testified. He maintained that, and it's what he told Agent Bishop. He's maintained that all along. And so whether the jury believed him or not, he also had to climb a hill that he shouldn't have had to climb because he had somebody saying that his cousin or brother or friend or associate had said that this man had devoted his life to the trafficking of marijuana. And that colors the whole way that the jury is going to look at this man as he testifies. He is not somebody who is achieving the American dream. He is somebody who has devoted his life to trafficking marijuana. And that's an inflammatory statement. It's a statement that should not have come in. Was it Mr. Diaz that test—I don't think—excuse me. Did somebody else testify that Diaz told a driver that he had picked up the vegetables, but he had some more things for him to pick up, which was marijuana? So Mr. Diaz, again, testified that he did not know that there was any illegal items going into his trucks. That was his testimony throughout. And so we'd ask that you reverse this case, that you let a new jury weigh the evidence that should have been admitted against Mr. Diaz, and we believe that a different verdict would be rendered if that were to happen. Thank you very much. Were you trial counsel? I was not, Your Honor. I was not. Thank you. Thank you. Thank you, sir. We'll call the second case for today.